UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In re:

**Stephen & Teresa Schmaltz**

Case No: 13-02162–11

Debtors

**Debtor's Plan Of
Reorganization**

This plan is for Stephen
Schmaltz only.

**Counsel for the Debtor:**

Jeffrey M. Hester
TUCKER HESTER
BAKER & KREBS, LLC
One Indiana Square, Suite 1600
Indianapolis, IN 46204
jhester@thbklaw.com
317.608.1129 direct
317.833.3031 fax

**Table of Contents**

1.  *Definitions* ........................................................................3

2.  *Introduction*..................................................................7

3.  *Treatment Of Administrative Expense Claims And Priority Tax Claims And Other Priority Claims* ...............................7

4.  *Classification Of Classes Of Claims And Interests* ....................9

5.  *Treatment Of Claims* ..................................................10

6.  *Provisions Governing Distributions* ...........................15

7.  *Means Of Effectuating The Plan*...............................16

8.  *Executory Contracts* ...................................................16

9.  *Property To Be Dealt With By The Plan* ..................16

10. *Reservation Of Rights*.................................................17

11.  *Jurisdiction Of The Court* .........................................18

12. *Effect Of Confirmation Of The Plan*........................19

13. *Exculpation* ...................................................................20

14. *Miscellaneous Provisions* ..........................................20

Pursuant to 11 U.S.C. §101 et seq. of the United States Bankruptcy Code, the Debtor-in-Possession in the above-referenced Case hereby proposes to the creditors of the Debtor, the following Plan of Reorganization of the Debtor in satisfaction and discharge of all existing Claims against and Interests in the Debtor.

## 1. Definitions

1.1.  All terms used in this Plan, unless otherwise defined in this section or given different meaning as required in the text herein, are as defined in the Bankruptcy Code. The following terms shall have the meaning set forth in this section:

1.2. **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estate of the Debtor, any costs and expenses of the Debtor in connection with the administration and implementation of the Plan, all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under §§ 330 and 503 of the Bankruptcy Code and any fees or charges assessed against the estate of the Debtor under 28 U.S.C. § 1930.

1.3. **Allowed**  means, with reference to a Claim: (a) any Claim as to which a proof of Claim is filed in this proceeding against the Debtor in a timely manner and as to which no objection has been or is hereafter filed; (b) any Claim allowed hereunder; (c) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court or under the Plan; or (d) any Claim which, if disputed, has been allowed by Final Order. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, Allowed Administrative Expense Claims and Allowed Claims shall not, for any purpose under the Plan include interest, punitive damages or any fine or penalty on such Allowed Administrative Expense Claim or Allowed Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the holder thereof, to the extent such Claim may be setoff pursuant to § 553 of the Bankruptcy Code.

1.4. **Approving Order** means the *Order* entered by the Bankruptcy Court on November 27, 2013 [docket #76] approving the Stipulation.

1.5. **Ash** is Judith A. Ash.

1.6. **Bankruptcy Code** means the version of the United States Bankruptcy Code, 11 U.S.C. §101 et seq., in effect on the Petition Date.

1.7. **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.

1.8. **Bankruptcy Rules** means the version of the Federal Rules of Bankruptcy Procedure in effect on the Petition Date.

1.9. **Baxter** means Andrea L. Baxter.

1.10. **Case** means the above-captioned bankruptcy proceeding of the Debtor.

1.11. **Citimortgage** means Citimortgage, Inc.

1.12. **Claim** means that definition of a claim under §101(5) of the Bankruptcy Code defining a claim as (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.13. **Class** means any class into which Claims or Equity Interests are classified pursuant to this Plan.

1.14. **Confirmation Date** means the date upon which the Order of Confirmation is entered by the Bankruptcy Court.

1.15. **Consummation** of the Plan means the accomplishment of payment in full to all Claims pursuant to section 3.2 and 3.3.

1.16. **Debtor** means the Debtor, Stephen Schmaltz, named in the caption of this Case.

1.17. **DCT.** Means the Delaware County, Indiana Treasurer.

1.18. **Disclosure Statement** means the disclosure statement of the Debtor, filed contemporaneously with this Plan pursuant to § 1125 of the Bankruptcy Code.

1.19. **Disputed Claim** means any Claim which has been listed as "disputed", "contingent" or "unliquidated" in the Debtor's schedules or as to which an objection to the allowance of which is interposed, which objection has not been determined as of the Effective Date.

1.20. **Effective Date** means the date on which the Order of Confirmation of the Plan is no longer subject to appeal or certiorari proceedings, on which date no such appeal or certiorari proceedings are then pending and on which date all of the conditions of the effectiveness of the Plan expressly set forth in the Plan have been satisfied fully, or effectively waived.

1.21. **Equity Interests** means all rights arising out of ownership of Property of the Debtor.

1.22. **Fannie Mae** means the Federal National Mortgage Association.

1.23. **Final Order** means an order of a court from which no appeal can be taken, or as to which all appeals have been withdrawn or dismissed with prejudice.

1.24. **Finally Determined** means for all purposes related to the Claim to which objections have been made, the date on which an order allowing, disallowing or in part allowing or disallowing that Claim becomes a Final Order.

1.25. **General Unsecured Claim** means a Claim that is entitled to priority under §726(a)(2).

1.26. **IDR** means the State of Indiana, through its Indiana Department of Revenue.

1.27. **IRS** means the United States of America, through its Internal Revenue Service.

1.28. **MSD** means the Muncie Sanitary District.

1.29. **MutualBank** mean MutualBank f/k/a Mutual Federal Savings Bank.

1.30. **Net Monthly Income** means the sum determined by deducting from the Debtor's gross monthly income all on-going expenses of the Reorganized Debtor.

1.31. **Order of Confirmation** means the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.32. **Other Priority Claim** means a priority Claim specified in § 507 of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

1.33. **Petition Date** means the date on which the Debtor filed his petition for relief in this Case with the Bankruptcy Court, which in this case is March 12, 2014.

1.34. **Plan** means this plan of reorganization in its present form or as it may be modified or supplemented.

1.35. **Priority Tax Claim** means any unsecured Claim of a governmental unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

1.36. **Property** means any interest or claim of the Debtor in any kind of property or asset, whether real, personal, tangible, intangible or mixed.

1.37. **Pro-Rata** means the portion that an Allowed Claim in a particular class bears to the aggregate amount of Allowed Claims in such class.

1.38. **Reorganized Debtor** means the status of the Debtor after the confirmation of the Plan.

1.39. **Secured Claim** means a Claim: (1) secured by liens, security interest, or other charges against or interest in any Property in which the Debtor has an interest; and (2) to the extent of the value (determined in accordance with §506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such Property.

1.40. **Secured Tax Claim** means a secured claim which would otherwise meet the description of a Priority Tax Claim.

1.41. **Stipulation** means the *Stipulation For Use Of Cash Collateral And Adequate Protection* filed on November 25, 2013 [docket #75].

1.42. **Interpretation, Application of Definitions and Rules of Construction**. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all references to section, schedule or exhibit in the Plan are to the respective section in, schedule to, or exhibit to, the Plan. The words "herein" "hereof" "hereto" "hereunder" and other words of similar import refer to the Plan as a whole and not to any

particular section, subsection or clause contained in the Plan. The rules of construction contained in § 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience or reference only and shall not limit or otherwise affect the provisions of the Plan.

2.  **INTRODUCTION**

2.1. The Debtor is individual who resides in and who owns residential rental properties in Muncie, Indiana. The Debtor's property consists primarily of 10 rental properties.  The Debtor generally rents the properties to Ball State University students.

2.2. This plan proposes existing equity continue owning and operating the 10 rental properties for income. Pursuant to the plan, secured creditors MutualBank, Ash, Fannie Mae and Citimortgage will be paid in full on their secured claims in a commercially reasonable amount of time. Priority and secured tax claims and child support claims will also be paid in full.

2.3. The Debtor believes this plan is in the best interest of their creditors as a whole. This plan provides all creditors, including all secured creditors, more than what they would receive in a chapter 7 liquidation.

2.4. Debtor's wife, Teresa Schmaltz, will be moving this Court to de-consolidate this case and upon de-consolidation, convert her case a case under Chapter 7. Since there is no equity in any of the rental properties, it is anticipated those assets will be abandoned from her Chapter 7 estate and revert back to her. To the extant that happens, the Debtor and Teresa Schmaltz may decide to transfer title in the rental properties to the Debtor alone to the extent they are jointly titled now.

3.  **TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS AND OTHER PRIORITY CLAIMS**

3.1.  **Non-Classification.** As provided in § 1123(a) of the Bankruptcy Code, Administrative Expense Claims are not classified for the purposes of voting on or receiving distributions under the Plan. All such Claims are instead treated separately pursuant to the terms set forth in this section.

7

3.2. **Administrative Expense Claims.** Except to the extent that any entity entitled to payment of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive cash in an amount equal to such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course shall be paid in full by the Reorganized Debtor in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

3.3. **Professional Compensation and Reimbursement Claims.** All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under §§ 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to § 503 of the Bankruptcy Code shall (a) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is thirty (30) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court, and (b) if granted such an award by the Bankruptcy Court, be paid in full in cash in such amounts as are allowed by the Bankruptcy Court, on the date which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable.

3.4. **Priority and Secured Tax Claims under §507(a)(8).** The Allowed Priority Tax Claims and Allowed Secured Tax Claims shall be paid with interest at the applicable statutory interest rate in effect on the Confirmation Date, in four, consecutive, equal quarterly installment payments, beginning with the first full quarter following the Confirmation Date or from the date which such Priority Tax Claim Claim or Allowed Secured Tax Claim becomes an Allowed Priority Tax Claim or Allowed Secured Tax Claim, whichever is later. Payments shall be on the last day of the quarter. The Debtor shall have up to 5 years from the date which such Priority Tax Claim Claim or Allowed Secured Tax Claim becomes an Allowed Priority Tax Claim or Allowed Secured Tax Claim or the Confirmation Date, whichever is later, for payment of

such claim. Only the IRS and the IDR are anticipated to have claims. The Debtor does not believe there is any Allowed Secured Claim because the Debtor had no equity in any property on the Petition Date for any tax lien to attach.

**4.  CLASSIFICATION OF CLASSES OF CLAIMS AND INTERESTS**

4.1. All Claims and Equity Interests arising from the past or present debt of, or an interest in the Debtor shall be bound by the provisions of this Plan. Such Claims and Equity Interests are hereby classified as follows:

4.1.1. **Class 1: Allowed Secured Claim of MutualBank.** Class 1 consists of the Allowed Secured Claim of MutualBank, such debt being secured by liens on the Debtor's real property.

4.1.2. **Classes 2-7: Allowed Secured Claims of Fannie Mae.** Classes 2-7 consists of the Allowed Secured Claims of Fannie Mae, such debts being secured by separate mortgage liens on the Debtor's rental real properties.

4.1.3. **Class 8: Allowed Secured Claim of Citimortgage.** Class 8 consists of the Allowed Secured Claim of Citimortgage, such debt being secured by liens on the Debtor's real property.

4.1.4. **Class 9: Allowed Secured Claim of Ash.** Class 9 consists of the Allowed Secured Claim of Ash, such debt being secured by a second lien on of the Debtor's rental properties.

4.1.5. **Class 10: Allowed Secured Tax Claim of the DCT**. Class 10 consists of the Allowed Secured Claim of the DCT for real property taxes, such debt being secured by a statutory lien against the Debtor's real property.

4.1.6. **Class 11: Allowed Secured Claim of the MSD**. Class 11 consists of the Allowed Secured Claim of the MSD for any statutory or judgment lien against the Debtor's real property.

4.1.7. **Class 12: Allowed Priority Unsecured Claim of Baxter.** Class 12 consists of the Allowed Priority Unsecured Claim of Baxter for child support.

4.1.8. **Class 13: Allowed General Unsecured Claims.** Class 13 consists of all other Allowed General Unsecured Claims, including claims arising from the rejection of executory contracts.

4.1.9. **Class 14: Equity Interests.** Class 14 consists of the Debtor only.

5. **TREATMENT OF CLAIMS**

### 5.1. Class 1 - Allowed Secured Claim Of MutualBank

5.1.1. **Impairment and Voting**. Class 1 is impaired by the Plan. The holder of the Allowed Secured Claim of MutualBank is entitled to vote to accept or reject the Plan.

5.1.2. **Distribution.** The Allowed Secured Claim of MutualBank has already been determined and Allowed by the Stipulation and Approving Order in the amount of $126,000. Payment of the Allowed Secured Claim shall be in accordance with the Stipulation. All terms of the Stipulation shall continue in full force and effect and shall remain unaltered by the Plan. Without altering or amending the Stipulation, and by way of description only, a summary of the Stipulation terms include the following: (a) MutualBank shall retain it judgment lien on 2405 North Rosewood Avenue, Muncie, Indiana and 2104 North Glenwood Avenue, Muncie, Indiana; (b) upon confirmation, MutualBank shall release its judgment lien from all other properties of the Debtor (except for 3211 West Bethel Avenue, Muncie, Indiana, for which the Debtor must pay $1,500 to secure a release); (c) payments on the Allowed Secured Claim of MutualBank shall be amortized over a 25-year term and payable over 15 years with a balloon due at the end of 15 years; (d) payments are in the amount of $818.48 plus escrows for taxes and insurance; (e) the balloon payment is $74,259.09; and (f) payment on the Allowed Secured Claim of MutualBank is non-recourse to the Debtor.

### 5.2. Class 2 – Allowed Secured Claim Of Fannie Mae (1213 West Rex Street)

5.2.1. **Impairment and Voting**. Class 2 is impaired by the Plan. The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1213 West Rex St., Muncie, Indiana is entitled to vote to accept or reject the Plan.

5.2.2. **Distribution.** The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1213 West Rex St., Muncie, Indiana shall receive payment in full on the Allowed Secured Claim of Fannie Mae over a period of 360 months with interest at 3.25%. The first of the 360 monthly installment payments shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later. To effect this

provision, Fannie Mae shall receive the following new loan documents: installment promissory note; mortgage; and assignment of leases and rents. All existing loan documents shall be cancelled. Fannie Mae's collateral is limited to 1213 West Rex St., Muncie, Indiana. Taxes and insurance with respect to such property shall be paid directly by the Debtor.

### 5.3. Class 3 – Allowed Secured Claim Of Fannie Mae (3804 West Silver Lane)

5.3.1. **Impairment and Voting**. Class 3 is impaired by the Plan. The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 3804 West Silver Ln., Muncie, Indiana is entitled to vote to accept or reject the Plan.

5.3.2. **Distribution.** The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 3804 West Silver Ln., Muncie, Indiana shall receive payment in full on the Allowed Secured Claim of Fannie Mae over a period of 360 months with interest at 3.25%. The first of the 360 monthly installment payments shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later. To effect this provision, Fannie Mae shall receive the following new loan documents: installment promissory note; mortgage; and assignment of leases and rents. All existing loan documents shall be cancelled. Fannie Mae's collateral is limited to 3804 West Silver Ln., Muncie, Indiana. Taxes and insurance with respect to such property shall be paid directly by the Debtor.

### 5.4. Class 4 – Allowed Secured Claim Of Fannie Mae (518 North Dicks St.)

5.4.1. **Impairment and Voting**. Class 4 is impaired by the Plan. The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 518 North Dicks St., Muncie, Indiana is entitled to vote to accept or reject the Plan.

5.4.2. **Distribution.** The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 518 North Dicks St., Muncie, Indiana shall receive payment in full on the Allowed Secured Claim of Fannie Mae over a period of 360 months with interest at 3.25%. The first of the 360 monthly installment payments shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later. To effect this

provision, Fannie Mae shall receive the following new loan documents: installment promissory note; mortgage; and assignment of leases and rents. All existing loan documents shall be cancelled. Fannie Mae's collateral is limited to 518 North Dicks St., Muncie, Indiana. Taxes and insurance with respect to such property shall be paid directly by the Debtor.

### 5.5. Class 5 – Allowed Secured Claim Of Fannie Mae (1305 North New York Avenue)

5.5.1. **Impairment and Voting**. Class 5 is impaired by the Plan. The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1305 North New York Ave., Muncie, Indiana is entitled to vote to accept or reject the Plan.

5.5.2. **Distribution.** The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1305 North New York Ave., Muncie, Indiana shall receive payment in full on the Allowed Secured Claim of Fannie Mae over a period of 360 months with interest at 3.25%. The first of the 360 monthly installment payments shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later. To effect this provision, Fannie Mae shall receive the following new loan documents: installment promissory note; mortgage; and assignment of leases and rents. All existing loan documents shall be cancelled. Fannie Mae's collateral is limited to 1305 North New York Ave., Muncie, Indiana. Taxes and insurance with respect to such property shall be paid directly by the Debtor.

### 5.6. Class 6 – Allowed Secured Claim Of Fannie Mae (1217 West Rex Street)

5.6.1. **Impairment and Voting**. Class 6 is impaired by the Plan. The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1217 West Rex ST., Muncie, Indiana is entitled to vote to accept or reject the Plan.

5.6.2. **Distribution.** The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1217 West Rex St., Muncie, Indiana shall receive payment in full on the Allowed Secured Claim of Fannie Mae over a period of 360 months with interest at 3.25%. The first of the 360 monthly installment payments shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later. To effect this

provision, Fannie Mae shall receive the following new loan documents: installment promissory note; mortgage; and assignment of leases and rents. All existing loan documents shall be cancelled. Fannie Mae's collateral is limited to 1217 West Rex St., Muncie, Indiana. Taxes and insurance with respect to such property shall be paid directly by the Debtor.

### 5.7. Class 7 – Allowed Secured Claim Of Fannie Mae (1225 West Rex Street)

5.7.1. **Impairment and Voting**. Class 7 is impaired by the Plan. The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1225 West Rex St., Muncie, Indiana is entitled to vote to accept or reject the Plan.

5.7.2. **Distribution.** The holder of the Allowed Secured Claim of Fannie Mae secured by a mortgage on 1225 West Rex St., Muncie, Indiana shall receive payment in full on the Allowed Secured Claim of Fannie Mae over a period of 360 months with interest at 3.25%. The first of the 360 monthly installment payments shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later. To effect this provision, Fannie Mae shall receive the following new loan documents: installment promissory note; mortgage; and assignment of leases and rents. All existing loan documents shall be cancelled. Fannie Mae's collateral is limited to 1225 West Rex St., Muncie, Indiana. Taxes and insurance with respect to such property shall be paid directly by the Debtor.

### 5.8. Class 8 - Allowed Secured Claim of Citimortgage

5.8.1. **Impairment and Voting**. Class 8 is impaired by the Plan. The holder of the Allowed Secured Claim of Citimortgage is entitled to vote to accept or reject the Plan.

5.8.2. **Distributions.** The holder of the Allowed Secured Claim of Citimortgage secured by a mortgage on 1221 West Rex St., Muncie, Indiana shall receive payment in full on the Allowed Secured Claim of Citimortgage over a period of 360 months with interest at 3.25%. The first of the 360 monthly installment payments shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later. To effect this provision, Citimortgage shall receive the following new loan documents: installment promissory note; mortgage; and

assignment of leases and rents. All existing loan documents shall be cancelled. Citimortgage's collateral is limited to 1221 West Rex, Muncie, Indiana. Debtor is abandoning any interest they have in 7020 Nebo Road, Muncie, Indiana. Taxes and insurance with respect to such property shall be paid directly by the Debtor.

### 5.9. **Class 9 - Allowed Secured Claim of Ash**

5.9.1. **Impairment and Voting**. Class 9 is unimpaired by the Plan. The holder of the Allowed Secured Claim of Ash is not entitled to vote to accept or reject the Plan.

5.9.2. **Distributions.** The holder of the Allowed Secured Claim of Ash secured by a second mortgage on 3804 Silver, Muncie, Indiana shall continue receiving regular mortgage payments in accordance with pre-Petition loan agreements.

### 5.10. **Class 10 – Allowed Secured Tax Claim Of DCT**

5.10.1. **Impairment and Voting**. Class 10 is impaired by the Plan. The holder of the Allowed Secured Tax Claim of the DCT is entitled to vote to accept or reject the Plan.

5.10.2. **Distribution.** The holder of the Allowed Secured Tax Claim of the DCT shall receive monthly installment payments over sixty (60) months. The first installment payment shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Tax Claim, whichever is later.

### 5.11. **Class 11 – Allowed Secured Claim Of MSD**

5.11.1. **Impairment and Voting**. Class 11 is impaired by the Plan. The holder of the Allowed Secured Claim of the MSD is entitled to vote to accept or reject the Plan.

5.11.2. **Distribution.** The holder of the Allowed Secured Claim of the MSD shall receive monthly installment payments over sixty (60) months. The first installment payment shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Secured Claim, whichever is later.

### 5.12. **Class 12 - Allowed Priority Unsecured Claim of Baxter**

5.12.1. **Impairment and Voting**. Class 12 is impaired by the Plan. The holder of the Allowed Priority Unsecured Claim of Baxter is entitled to vote to accept or reject the Plan.

5.12.2. **Distributions.** The holder of the Allowed Priority Unsecured Claim of Baxter shall receive monthly installment payments over sixty (60) months. The first installment payment shall be made on the first day of the first full month following the Confirmation Date or the date the claim becomes an Allowed Priority Unsecured Claim of Baxter, whichever is later.

### 5.13. **Class 13 - Allowed General Unsecured Claims**

5.13.1. **Impairment and Voting**. Class 13 is impaired by the Plan. The holders of the Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.13.2. **Distributions.** The Debtor shall pay a Pro-Rata dividend of one percent (1.0%) on all Allowed General Unsecured Claims in Classes 12 to be paid in two, equal installments, on the first and second anniversary dates of the Confirmation Date.

### 5.14. **Class 14 – Equity Interests**

5.14.1. **Impairment and Voting.** Class 14 is impaired by the Plan. The holder of the Equity Interest is entitled to vote to accept or reject the Plan.

5.14.2. **Distributions.** The holder of the Equity Interest is not required to file a proof of claims/interest herein and shall retain their ownership interests in the Property, which for purposes of §1129(b) shall be valued at $0.

### 6. PROVISIONS GOVERNING DISTRIBUTIONS

6.1. **Distributions of Cash**. All distributions under the Plan shall be made by the Reorganized Debtor in accordance with the priorities established by the Plan. At the option of the Reorganized Debtor, any cash payments to be made pursuant to the Plan may be made by check or wire transfer.

6.2. **Delivery of Distributions.** Distributions to the holders of Allowed Claims will be made at the address set forth in the proof of claim filed by holders of Claims, unless the Reorganized Debtor receives written notice of address change after the date of filing of any proof of claim.

6.3. **Undeliverable and Unclaimed Distributions.** If any holder's distribution is returned as undeliverable, the Reorganized Debtor will take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim. Any holder of an Allowed Claim that does not advise the Reorganized Debtor that it has not received the distribution within six (6) months after the

date of attempted distribution will have the claim for such undeliverable distribution discharged and will be forever barred from asserting any such claim against the Reorganized Debtor or the Property. Distributions must be negotiated within 120 days of the date of distribution. Any distributions which are undeliverable and unclaimed or have not been cashed within the time period set forth above shall be retained as Property of and available to the Reorganized Debtor.

7. **MEANS OF EFFECTUATING THE PLAN**

7.1. **Source of Funds to Effectuate Plan.** The source of funds used in this Plan to fund payments to creditors shall be the Net Monthly Income of the Reorganized Debtor resulting from continued, normal business operations of the Debtor's rental homes beginning on the last day of the month in which the Effective Date occurs.

7.2. **Feasibility.** Section 1129(a)(11) of the Bankruptcy Code provides that a Chapter 11 plan may be confirmed only if the bankruptcy Court finds that such plan is feasible. This Plan will provide a greater creditor distribution to creditors than if the Debtor's rental homes were sold in a Chapter 7 proceeding or in a foreclosure case. By continuing to operate, the Debtor anticipates no difficulties in generating revenue as it had been both prior to and after the Petition Date.

8. **EXECUTORY CONTRACTS**

8.1. Effective as of the Confirmation Date, with the exception of contracts listed on **Attachment A**, the Debtor hereby rejects any and all executory contracts and unexpired leases which have not previously or hereby been assumed or rejected herein. Any person or entity injured by such rejection shall be deemed to hold a General Unsecured Claim against the Debtor and, within ten (10) days following the Confirmation Date, shall file a proof of claim for any damages resulting there from, or be forever barred from asserting any Claim. The Debtor and all parties in interest reserve the right to object to any Claim asserted under this subparagraph.

8.2. The Debtor reserves the right to apply to the Bankruptcy Court at any time prior to the Confirmation Date to reject any and all executory contracts or unexpired leases.

9. **PROPERTY TO BE DEALT WITH BY THE PLAN**

9.1. All Property of the Debtor is dealt with by this Plan.

## 10. RESERVATION OF RIGHTS

10.1. Notwithstanding the confirmation of this Plan the Debtor shall retain the right to litigate the validity and extent of any Claim, whether or not addressed specifically in the Plan, and shall retain the right to litigate the validity and extent of any Disputed Claims.

10.2. Notwithstanding any other provision of this Plan, Disputed Claims shall be paid only if allowed after they are Finally Determined by the Court.

10.3. Notwithstanding confirmation of the Plan, and pursuant to §1123(b)(3) of the Bankruptcy Code, the Debtor shall retain and have authority to enforce, waive or assign any and all claims and/or causes of action under the Bankruptcy Code or non-bankruptcy law in the Bankruptcy Court or a state court of competent jurisdiction, except claims expressly waived, relinquished or released under this Plan or otherwise released or relinquished under this Plan or otherwise released or relinquished pursuant to an order of the Bankruptcy Court. The Debtor shall be authorized to prosecute such actions as fully and completely as if the same were being prosecuted by a trustee in bankruptcy.

10.4. Upon confirmation, the Debtor shall be re-vested with his Property, subject only to any outstanding liens recognized by this Plan, and shall be entitled to manage its affairs in the normal course, without further order of the Court.

10.5. Prior to the Confirmation Date, the Debtor may, with the approval of the Bankruptcy Court, amend or modify this Plan at any time upon notice to holders of Claims or Equity Interests whose interests may be adversely affected by said amendment or modification. The Plan may be modified by the Debtor only, subsequent to the Confirmation Date, upon notice and a hearing, in order to effectuate the intent and purposes of the Plan.

10.6. The confirmation hearing may be continued from time to time. No notice of any such continuance will be provided other than notice at the hearing and any continued hearing to those in attendance.

10.7. The failure by the Debtor to object to, or to examine any Claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine a Claim in whole or in part.

### 11.  JURISDICTION OF THE COURT

11.1. The Bankruptcy Court will retain jurisdiction until Consummation of the Plan for—but not limited to—the following purposes:

11.1.1. To adjudicate all controversies concerning the classification of any Claim and the re-examination of Claims which have been allowed for purposes of voting, and objections as may be filed to creditor's Claims;

11.1.2. To hear and determine all Claims arising from the rejection of any executory contract or unexpired lease and to consummate the rejection thereof;

11.1.3. To determine all questions and disputes regarding title to the Property of the estate, and to determine all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to, any right of the Debtor to pursue Claims and recover Property pursuant to the provisions of the Bankruptcy Code and non-bankruptcy law. In addition, the Court's power shall include, but not be limited to, the power to hear, determine and approve settlements of such litigation; appoint, designate or approve a disbursing agent or agents to receive the proceeds of such claims subject to further order of the Court; hear, determine and allow the payment of expenses incidental to such Claims; and to make such other orders and determinations as may be reasonable and proper in the premises;

11.1.4. To adjudicate all Claims to a security or ownership interest in any Property of the Debtor, or in any proceeds thereof;

11.1.5. To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claim;

11.1.6. To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan;

11.1.7. To modify this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code;

11.1.8. To enforce and interpret or construe the terms and conditions of this Plan or any order previously entered herein;

11.1.9. To ensure that the purpose and intent of this Plan are effectuated;

11.1.10. To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

11.1.11. To determine and allow all expenses of administration incurred prior to, on, or after the Confirmation Date, including all requests for compensation of fees and expenses by Debtor's counsel and accountant.

11.1.12. To determine whether a default has occurred under the Plan, and make such orders as the Bankruptcy Court deems necessary to enforce the provisions of the Plan including, but not limited to, ordering a modification of the Plan or conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or such other relief as may be appropriate; and

11.1.13. To enter an order of Consummation Of The Plan and order closing this Case concluding and terminating this Case.

## 12. EFFECT OF CONFIRMATION OF THE PLAN

12.1. On Confirmation of the Plan, pursuant to §1141 of the Bankruptcy Code, and except as otherwise provided by the Plan or the Order of Confirmation:

12.1.1. The payments and distributions made pursuant to the Plan shall be in full and final satisfaction, settlement, release, and discharge as against the Debtor of any and all Claims against, and Equity Interests in the Debtor, as defined in the Bankruptcy Code, including, without limitation, any Claim or Equity Interests accrued on or before the Confirmation Date, whether or not: (i) a proof of claim or interest is filed or deemed filed under § 501 of the Bankruptcy Code, (ii) such Claim or Equity Interests is allowed under § 502 of the Bankruptcy Code, or (iii) the holder of such Claim or Equity Interests has accepted the Plan.

12.1.2. The Debtor's Property shall be free and clear of all liens, Claims and interest of creditors and the Debtor shall be discharged from any and all obligations and liabilities on account of such Claims, except for obligations under this Plan. All holders of Claims and their successors and assigns, shall be permanently enjoined after the Confirmation Date from asserting against the Debtor or the Reorganized Debtor—or any of the Property—any Claims or interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

## 13. EXCULPATION

13.1. Except for acts or omissions constituting gross negligence or willful misconduct, the Debtor and his partners, employees, agents, and professionals (acting in such capacity on and after the Petition Date) shall neither have nor incur any liability to any Person or Entity for any act taken, or omitted to be taken, prior to or after the Petition Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or consummating the Plan, and Disclosure Statement, or any contract, instrument, release, or any other agreement or document created, or entered into, in connection with the Plan, or any other act taken, or omitted to be taken, prior to or after the Petition Date in connection with, or in contemplation of the Chapter 11 Case.

## 14. MISCELLANEOUS PROVISIONS

14.1. **Effectuating Documents and Further Transactions.** The Reorganized Debtor are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, UCC filings, certificates of title, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.2. **Exemption from Transfer Taxes.** Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or issuance of debt under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sales, if any, by the Debtor of owned Property or assets pursuant to § 363(b) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

14.3. **Post-Effective Date Fees and Expenses.** From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity of any approval by

the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

14.4. **Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the confirmation hearing, shall be paid on the Effective Date.

14.5. **Request for Confirmation Under §1129(b).** If all the applicable requirements of §1129(a), other than §1129(a)(8) relating to an impaired class, are met with respect to the Plan, the Debtor requests that the Court find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under and has not accepted the Plan. Upon such finding, the Court is requested to confirm the Plan pursuant to §1129(b) notwithstanding the failure of such impaired class to accept the Plan.

14.6. **Amendment or Modification of the Plan.** Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtor or Reorganized Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with §1125 of the Bankruptcy Code. The Plan may be altered, or modified by the Debtor only at any time after the Confirmation Date and before Consummation of the Plan, provided that the Plan, as altered, amended or modified, satisfies the requirements of §§1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under §1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

14.7. **Severability.** In the event that the Bankruptcy Court determines that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be

invalid, void or unenforceable. The validity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

14.8. **Revocation or Withdrawal of the Plan.** The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any such Claims by or against the Debtor or any other person or entity or to prejudice in any manner the rights of the Debtor or any person or entity in any further proceedings involving the Debtor.

14.9. **Binding Effect.** The Plan shall be binding upon and inure to the benefit of the Debtor and the Reorganized Debtor, the holders of Claims and their respective successors and assigns.

14.10. **Notices.** All notices, requests and demands to or upon the Debtor, on and after the Effective Date, or the Reorganized Debtor, to be effective shall be in writing and unless otherwise expressly provided herein shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Stephen Schmaltz
> 3211 West Bethel
> Muncie, IN 47304
>
> *with a copy to:*
>
> Jeffrey M. Hester
> TUCKER HESTER
> BAKER & KREBS, LLC
> One Indiana Square, Suite 1600
> Indianapolis, IN 46204
> 317.833.3031 fax

14.11. **Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and objections arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana, without giving effect to the principles of conflicts of law of such jurisdiction.

14.12. **Withholding and Reporting Requirements.** In connection with the Consummation Of The Plan, the Debtor or Reorganized Debtor—as the case may be—shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

14.13. **Subordination Rights.** The classification and manner of satisfying all Claims under the Plan takes into consideration all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, § 510 of the Bankruptcy Code or otherwise, that a holder of a Claim may have against other holders of Claims.

14.14. **Headings.** Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

14.15. **Filing of Additional Documents.** On or before Consummation of The Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Date: July 25, 2014                    */s/ Stephen Schmaltz*

Respectfully submitted,

TUCKER HESTER
BAKER & KREBS, LLC

*/s/ Jeffrey M. Hester*
Jeffrey M. Hester
Suite 1600
One Indiana Square
Indianapolis, IN 46204
jhester@thbklaw.com
317.608.1129 direct
317.833.3031 fax

**Certificate Of Service**

I hereby certify that on July 25, 2014, a copy of the foregoing *Debtor's Plan of Reorganization* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Jeffrey M. Hester
jhester@thbklaw.com

John Philp Updike
updike@beasleylaw.com

KC Cohen
kc@esoft-legal.com

Joseph F. McGonigal
Joe.mcgonigal@usdoj.gov

Teresa E. Dearing
terry@fouttyandfoutty.com

*/s/ Jeffrey M. Hester*
Jeffrey M. Hester

**Attachment A**

**List of Assumed Contracts**

1. To be determined.